# THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. JIMMY BEAN *et al.*, Appellants.

*Opinion filed February 20, 1981.*

SIMON, J., took no part.

RYAN and UNDERWOOD, JJ., concurring in part and dissenting in part.

Brown, Goodman and Carper, Ltd., of Chicago (J. Chris Goodman, of counsel), for appellant Jimmy Bean.

James J. Doherty, Public Defender, of Chicago (James L. Rhodes, Assistant Public Defender, of counsel), for appellants Jessie Byrd and Frank Byrd.

Tyrone Fahner, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Mark A. Graf, Assistant State's Attorneys, and Melbourne A. Noel, Jr., and Mark L. Rotert, Assistant Attorneys General, of Chicago, of counsel), for the People.

MR. JUSTICE MORAN delivered the opinion of the court:

Defendants, Jimmy Bean, Jessie Byrd and Frank Byrd, were charged by indictment with two counts of armed robbery. The circuit court of Cook County quashed the arrest and suppressed statements of Jimmy Bean, and quashed the arrest and suppressed the identification evidence of Jessie and Frank Byrd. Upon appeal, the appellate court reversed and remanded both causes. 73 Ill. App. 3d 918.

All three defendants contend that their arrests violated their rights guaranteed by the fourth amendment to the United States Constitution. Defendant Bean argues (1) his arrest was without probable cause and (2) the circumstances surrounding the arrest in his apartment required a warrant. Defendants Jessie and Frank Byrd assert that (1) their arrest was invalid, having occurred as a direct result of Bean's illegal arrest, and (2) in any event, the circumstances surrounding their own arrest required a warrant.

On March 5, 1975, two men, armed with a sawed-off shotgun and pistol, entered a cleaning store and took money and phonograph records. On March 6, the investigating officer, Thomas Lahm, telephoned Lucinda Birmingham, whose name, address and telephone number had appeared on a police report of the March 5 incident. Ms. Birmingham told Officer Lahm that while she was standing across the street she observed two men come out of the cleaners and join two other men who were outside. She then saw all four run from the scene. She told Lahm that one of the men who had been outside the cleaners was Jimmy Bean, with whom she had previously gone to school. She further told Lahm that Bean was 17 or 18 years old and that he lived in the vicinity of Keeler and Gladys Streets (4200 West) in Chicago.

Subsequent to this conversation, Lahm checked the police alphabetic file and discovered that a Jimmy Bean had been arrested by Oak Park police in June 1974 and had given his address as 4211 West Gladys. Lahm then visited schools in the vicinity of 4211 West Gladys and learned that a Jimmy Bean went to school at Van Buren and Keeler Streets and had listed his address as 4211 West Gladys Street.

On March 13, at approximately 8 a.m., Lahm and Officer Korte accompanied by two other policemen arrived at 4211 West Gladys without a warrant. The accompanying officers went to the rear of the residence

while Lahm and Korte approached the front door and knocked. The mother of defendant, Mrs. Bean, testified that when she opened the door the officers showed her their badges and said, "Police officers, we want to see Jimmy." Mrs. Bean then asked them into the vestibule area; once inside; she requested the officers to wait while she left to put on a robe. The officers complied with this request. Upon her return, the officers again stated they wanted to see defendant. Mrs. Bean again asked them to wait while she went to get defendant. At this point, Korte went past her with his gun drawn. Mrs. Bean also testified that the officers went into defendant's bedroom and told him to get dressed.

Officer Lahm testified that while they were in the apartment the defendant emerged from a bedroom. Lahm stated that he walked as far as the bedroom doorway, but did not enter the bedroom, although he could not recall whether Korte entered. Lahm informed defendant he was under arrest and then searched him for weapons. Thereafter, defendant was taken to the police car where he was advised of his constitutional rights.

Lahm further testified that five minutes after the arrest the defendant made an oral statement concerning the robbery. This statement was substantially the same as a written statement later made at the police station. The statements indicated that Frank and Jessie Byrd participated in the robbery with him. Following defendant's oral statement to the police, the four officers and defendant proceeded to 4132 West Van Buren, where defendants Frank and Jessie Byrd were arrested. Later that day, the Byrds took part in a lineup and were identified as being participants in the armed robbery.

The trial court allowed Bean's motion to quash his arrest on the basis that no probable cause existed. One week later, the trial court entered an order to suppress both of Bean's statements as fruits of the illegal arrest.

The court continued the hearing as to the voluntariness of the statements. On October 27, the trial court allowed a motion to quash the Byrds' arrests and a motion to suppress the identification evidence. This action was founded on the ground that the illegal arrest of Bean led to the arrest and identification of the Byrds. The appellate court reversed and remanded both causes, noting that the police had probable cause to arrest Bean. In Bean's case, the appellate court directed the trial court to conduct a hearing on the voluntariness of his in-custody statements. With respect to Jessie and Frank Byrd, the appellate court directed a hearing on the circumstances of their arrests. Defendants now appeal that decision.

We first consider defendant Bean's contention that probable cause did not exist for his arrest. He argues that Lahm's telephone conversation with a person who identified herself as Lucinda Birmingham, the eyewitness to the crime, failed to provide trustworthy information upon which probable cause could be based.

Birmingham's name appeared as a witness on the original police report. When Lahm called her, she identified herself and identified Bean as one of the men who waited outside the cleaners and fled with the other three men. She told Lahm she had attended school with Bean and gave an approximate address of his home. The information as to Bean's school and residence was verified by a search of police files and school records. As an ordinary citizen (the record indicates no evidence that she was a paid, professional informant), as well as an eyewitness to the offense, the officer was justified in relying upon Birmingham's information. (*People v. Hoffman* (1970), 45 Ill. 2d 221, 225-26; *People v. Hester* (1968), 39 Ill. 2d 489, 513-14.) Although Lahm did not personally interview Birmingham, this court has held that a phone conversation can be the basis for establishing probable cause to arrest. (*People v. Parks* (1971), 48 Ill. 2d 232, 236; *People v.*

*Lucus* (1968), 41 Ill. 2d 370, 375.) Under the facts and law stated, we conclude that Lahm had probable cause at the time he arrested defendant Bean.

Having ascertained the existence of probable cause, we must determine if the arrest of Bean without a warrant in his apartment violated his rights under the fourth amendment. Bean contends, under *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, that even if probable cause is present, an arrest cannot be made in a person's dwelling without a warrant in the absence of exigent circumstances. In *Payton,* however, the Supreme Court specifically excluded from its consideration entries accompanied by consent. (445 U.S. 573, 583, 63 L. Ed. 2d 639, 649, 100 S. Ct. 1371, 1378.) In the instant case, the State contends the officers' entry was made with consent.

We agree that generally an arrest warrant is the desired means by which an individual's right to privacy is protected. (*Payton v. New York* (1980), 445 U.S. 573, 590, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1381-82; *McDonald v. United States* (1948), 335 U.S. 451, 453, 93 L. Ed. 153, 157, 69 S. Ct. 191, 192.) However, when voluntary consent is given to enter one's residence and an arrest is effected based on probable cause, the suspect's rights under the fourth amendment are not violated, even in the absence of exigent circumstances. The standard for valid consent applied by the Supreme Court in a variety of circumstances is whether that consent is voluntarily given. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248-49, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2058-59; *Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 20 L. Ed. 2d 797, 802, 88 S. Ct. 1788, 1791. See *Johnson v. United States* (1948), 333 U.S. 10, 13, 92 L. Ed. 436, 440, 68 S. Ct. 367, 368-69.) When a warrantless entry is justified by voluntary consent, that consent need not be given by defendant; it may be obtained from a third party

who has control over the premises. *United States v. Matlock* (1974), 415 U.S. 164, 171, 39 L. Ed. 2d 242, 249-50, 94 S. Ct. 988, 993; *People v. Heflin* (1978), 71 Ill. 2d 525, 541.

Here, the entry, unlike that in *Payton,* was in no way forceable. (In *Payton,* the police used crowbars to break down the door and in *Riddick v. New York,* decided with *Payton,* defendant's three-year-old son answered the door, whereupon the police entered. 445 U.S. 573, 583, 63 L. Ed. 2d 639, 649, 100 S. Ct. 1371, 1378.) Nor was the entry obtained by means of deception. Compare *Bumper v. North Carolina* (1968), 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788 (consent obtained from defendant's grandmother, the owner of the home, after policeman claimed that police had a search warrant, the existence of which was not shown).

According to Mrs. Bean's own testimony, upon the officers identifying themselves and asking to see Jimmy Bean, Mrs. Bean invited them to come inside the apartment. The officers then waited until Mrs. Bean returned with her robe. The testimony of all parties established that Mrs. Bean voluntarily invited the officers into the apartment. After she returned, and then started to leave to get the defendant, Korte went past her with his gun drawn. Whether Bean was found inside or outside his bedroom is not controlling. When officers are given consent to enter an apartment to arrest a suspect who was involved in an armed robbery, they should not be required to wait for that person (who might be armed) to approach them or possibly attempt to escape. We hold that Bean's arrest, based on probable cause and with consent to enter his apartment, was legal.

Defendants Jessie and Frank Byrd contend that their arrests occurred only as a result of Bean's oral statement obtained after his illegal arrest. Consequently, they argue, their arrests and identifications also were illegal as the

fruits of Bean's arrest. Having held Bean's arrest to be legal, this contention must fail.

The Byrds also argue that the circumstances surrounding their own arrest violated their fourth amendment rights. At the hearing on motions to quash their arrests and suppress their identifications, the State and the Byrds stipulated as to the following facts: (1) at the point of Bean's arrest, the police investigation had not yet focused on the Byrds, (2) within minutes of Bean's arrest, he made an oral statement naming the Byrds as participants with him in the armed robbery, (3) acting upon this statement the police then traveled to 4132 West Van Buren and there made the arrests of Jessie and Frank Byrd at approximately 8 a.m., and (4) the Byrds were identified in a lineup that day. The record, however, does not indicate if the above arrests were in the Byrds' home, if the police entered the building, or if the police did enter the Byrds' home, whether such entry was with consent. Like the appellate court, we are unable to determine from the record the circumstances surrounding the Byrds' arrest.

We agree with the appellate court that these causes must be remanded to the trial court for further hearings as to the voluntariness of Bean's statements and the circumstances surrounding the arrests and identifications of Jessie and Frank Byrd.

For the reasons stated, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE SIMON took no part in the consideration or decision of this case.

MR. JUSTICE RYAN, concurring in part and dissenting in part:

I concur in the majority opinion insofar as it relates to the defendant Jimmy Bean, but I dissent from that part of the opinion of my colleagues which remands the case of

Jessie and Frank Byrd to the trial court for a determination of the circumstances surrounding their arrest.

The burden was on the Byrds to prove the illegality of their arrest. They relied, in the trial court and in our court, on the fact that Bean was illegally arrested and that Bean's statement could not supply probable cause for their warrantless arrest. The opinion disposes of this contention by finding that Bean's arrest was legal.

Whatever other reason there may be for holding the arrest of the Byrds to be illegal, the burden was on them to establish facts in support of such a determination in the trial court. The opinion of my colleagues states that we are unable to determine from the record the circumstances surrounding the Byrds' arrest. To me, this says that the Byrds have not proved that they were illegally arrested and thus they have not sustained their burden of proof. I can see no reason for giving them another opportunity to do so. I would therefore reverse the holding of the appellate court as to the Byrds and remand their cause to the trial court for trial on the question of guilt.

MR. JUSTICE UNDERWOOD joins in this partial concurrence and partial dissent.