THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* STEVIE MOORE, a/k/a Christopher Moore, a/k/a James Smith, Defendant-Appellant.

First District (2nd Division)    No. 80-2429

Opinion filed December 15, 1981.—Rehearing denied May 3, 1982.

Ralph Ruebner, Steven Clark, and Patricia Unsinn, all of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean C. Morask, and Gregory G. Thiess, Assistant State's Attorneys, of counsel), for the People.

JUSTICE STAMOS delivered the opinion of the court:

Defendant Stevie Moore was convicted of robbery and sentenced to 3 years in the Illinois Department of Corrections. Defendant appeals, contending that (1) his arrest without a warrant was illegal in that police, who would have been required to have a warrant to arrest him inside his home, used a subterfuge to lure him from his home and effect the arrest in a public place; (2) he was denied the effective assistance of counsel; and (3) the trial court improperly excluded evidence tending to prove that defendant had *not* been identified as the robber prior to his arrest.

At about 11:30 p.m. on February 28, 1979, Gail Anderson was returning to her apartment on North Wolcott Street in Chicago. The apartment building had an unlocked outer door and an illuminated narrow hallway about 15 feet long leading to a locked security door. As Miss Anderson was unlocking the security door she heard footsteps in the hall and saw two men running toward her. She tried to push the security door shut but the men caught the door before it latched and forced the

door open. One of the men pushed her against the wall, put his hand over her mouth and told her not to scream. The man pushing her against the wall demanded money, and Miss Anderson surrendered her purse. The man passed the purse to the second robber who was standing an arm's length away to Miss Anderson's right. While the first robber went through Miss Anderson's pockets, the second robber rifled her purse. Before the men left, the second robber took Miss Anderson's keys. She watched the two men leave by the front door and saw the second robber drop the keys in a snow bank outside. Miss Anderson followed the men outside and saw them enter a car that was standing in the street with its engine running. She described the car as a late model blue Chevrolet Vega with license plate number SAL 547.

Charles Ford, an investigator with the Chicago Police Department, interviewed Gail Anderson on March 1, 1979. At trial, Ford testified that a computer terminal in the police station provides access to the Secretary of State's automobile registration records. Ford entered the plate number "SAL 547" and learned that the license number belonged to a Cadillac registered to a person living outside of Chicago. Ford then entered the partial plate number "SAL" and learned that plate number SAL 567 was registered to a blue 1977 Chevrolet that had been reported stolen. The car was registered to Dorothy Holiday.

On March 1, Investigator Ford phoned Mrs. Holiday. At trial, Holiday testified that her car, a blue Chevrolet Vega, had been stolen on February 22, 1979, while it was in the custody of a friend, James Ollie. Ford also called Mr. Ollie on March 1. At trial, Ollie testified that Dorothy Holiday, a friend and co-worker, regularly gave him the use of her car. On February 22, 1979, after driving Holiday home from work, Ollie drove the Vega to a tavern. While at the tavern, Ollie encountered defendant, whom he knew. Defendant introduced Ollie to a woman named Cheryl, whom defendant described as a cousin. At about 9:30 p.m., Ollie and Cheryl left the tavern in the Vega and drove to a motel, where they had intercourse. Ollie awoke about 2 a.m. to find Cheryl and the Vega missing, along with $20 from Ollie's pocket and the Vega's keys. Ollie then reported that the car had been stolen.

On March 5, Ford interviewed Gail Anderson for the second time and showed her five police "mug shots." One of the photographs was of defendant; another was of defendant's brother. At trial, Anderson and Ford testified that she positively identified defendant as the man who went through her purse and dropped her keys in the snow (the "second robber"). Anderson testified that she also selected the photograph of defendant's brother, believing at the time that the two pictures were of the same person. On April 4, 1979, Anderson viewed a lineup and

positively identified defendant as one of the robbers. Anderson also identified defendant at trial.

Investigator Ford testified that during March 1979 he made several unsuccessful attempts to arrest defendant. On the evening of April 3, Ford and his partner made two trips to defendant's apartment. There is conflicting testimony as to precisely what occurred during these visits. Ford testified that, on the first visit, defendant was not home. Ford left instructions with defendant's wife for defendant to call Ford. Ford stated that he told defendant's wife that defendant was wanted for robbery. A short time later, defendant phoned Ford and Ford advised defendant that he would come by to pick him up. When Ford arrived at defendant's home, defendant came out and surrendered. He was then placed under arrest.

At a hearing on a motion to suppress evidence, defendant and his wife testified concerning the circumstances of defendant's arrest. Their testimony conflicts with that of Ford only with respect to what Ford allegedly said during his two visits. Defendant's wife testified that when Ford came to the apartment he said, with reference to the robbery, "We know that he didn't do it but we think that he may know someone who did it." Defendant testified that, during his phone conversation with Ford, he (defendant) denied involvement in any robbery and Ford stated that he only wanted defendant to come to the station to look at some pictures and answer some questions. Defendant's wife testified that, when defendant went out to meet the policemen on their second visit, she called down from the apartment and asked if she could go along. One of the policemen reportedly answered, "No need for you going. We are going to ask him some questions. We will bring him right back."

Defendant moved to quash his arrest and suppress evidence concerning the April 4 lineup, contending that his arrest was illegal and the subsequent lineup was a product of the illegal arrest. Citing *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, defendant argued that the police, who did not have an arrest warrant, could not have entered his home to effect the arrest. Defendant asserted that Ford's alleged statement (*e.g.*, "We know that he didn't do it") were calculated to draw defendant from his home so that the police could arrest him in a public place, thus circumventing the warrant requirement. Defendant acknowledges that a warrantless arrest in a public place, upon probable cause, is legal. The trial court found that the police had probable cause to effect the arrest and defendant does not appeal that finding. In denying defendant's motions, the trial court did not state which version of the arrest he found more credible. He simply stated that the arrest was properly made upon probable cause.

The trial court's order does not comply with section 114—12 of the Code of Criminal Procedure of 1963, which, referring to motions to suppress, states:

"(e) The order or judgment granting or denying the motion shall state the findings of facts and conclusions of law upon which the order or judgment is based." (Ill. Rev. Stat. 1979, ch. 38, par. 114—12(e).)

Defendant contends on appeal that since the trial court's order lacked a finding of fact with respect to the credibility issue, the conviction must be reversed and the cause remanded for such a ruling. In response, the State cites *People v. Holloman* (1970), 46 Ill. 2d 311, 317, 263 N.E.2d 7, and argues that the ruling below implies that the trial court discredited defendant's and his wife's testimony.

■■ Before addressing the questions presented by the form of the trial court's ruling, we must answer a more basic question: did defendant offer evidence sufficient to support an order quashing the arrest and suppressing the lineup evidence? Put another way, does defendant's and his wife's testimony, *taken as true*, compel the conclusion that the arrest was illegal? We think not. Defendant assumes that since the *Payton* case requires police to have an arrest warrant before entering a suspect's home, any act of the police that induces a suspect to leave his home must be an unconstitutional circumvention of the *Payton* rule. None of the cases cited by defendant suggests that such a *per se* rule is either necessary or desirable. In *Payton*, the Supreme Court stressed the inviolability of the home and stated that warrantless intrusions into the home are presumptively unreasonable. (445 U.S. 573, 586, 63 L. Ed. 2d 639, 651, 100 S. Ct. 1371, 1380.) In the case at bar, there was no nonconsensual entry into defendant's home. Defendant left his home and was arrested on the street. Defendant argues that his act of leaving the home was induced by deception so that his presence on the street was not truly voluntary. The United States Supreme Court has indicated that "voluntariness" in such situations is not susceptible of fixed definition. Rather, the concept of voluntariness must accommodate a complex of values ranging from society's need for effective police investigations to fundamental notions of fairness. (See *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 224-25, 36 L. Ed. 2d 854, 861, 93 S. Ct. 2041, 2046.) Viewing the circumstances of defendant's arrest in that perspective, we do not believe that defendant's act of leaving his apartment was involuntary. In other contexts, courts have considered the police tactic of misinformation and have found no constitutional violation. (See, *e.g., People v. Boerckel* (1979), 68 Ill. App. 3d 103, 111-12, 385 N.E.2d 815, *cert. denied* (1980), 447 U.S. 911, 64 L. Ed. 2d 861, 100 S. Ct. 2998 (fact that police misrepresented the evidence against defendant did not render his confession involuntary or violate

fundamental fairness); *People v. Houston* (1976), 36 Ill. App. 3d 695, 699, 344 N.E.2d 641, *cert. denied* (1977), 429 U.S. 1109, 51 L. Ed. 2d 562, 97 S. Ct. 1143 (police officer investigating an armed robbery stated that he was investigating an accident; "suble subterfuge" held constitutionally permissible); see also *Lewis v. United States* (1966), 385 U.S. 206, 210, 17 L. Ed. 2d 312, 315-16, 87 S. Ct. 424, 427 (no violation of defendant's privacy when policeman misrepresented his identity in order to gain admittance to defendant's home and purchase illegal drugs).) The alleged deception in the instant case consisted of Ford's statements suggesting that defendant was not the target of the investigation. The police did not conceal their identities or the fact that they were investigating a robbery. We find that the subterfuge allegedly used does not violate fundamental fairness and does not illegally circumvent the rule announced in *Payton*. Defendant's arrest, based on probable cause, was therefore legal (see *United States v. Watson* (1976), 423 U.S. 411, 423-24, 46 L. Ed. 2d 598, 609, 96 S. Ct. 820, 828 (warrantless arrest in a public place, upon probable cause, does not violate the fourth amendment)), and the motion to quash the arrest and suppress evidence was properly denied.

■■ The trial court's failure to make the findings specified in section 114—12(e) is not dispositive. We do not believe that paragraph (e) of the statute was intended to create substantive rights for defendants moving to suppress evidence. On the contrary, the provision was intended to ensure a careful weighing of the evidence by trial courts ruling on such motions. When an order of the trial court cannot be properly reviewed, as, for instance, when the stated basis of the ruling is inapposite and otherwise dispositive factual questions have not been ruled on, then remand is necessary in order to resolve issues that may not be decided *de novo* in the reviewing court. (*Cf. People v. Tate* (1967), 38 Ill. 2d 184, 188, 230 N.E.2d 697 (trial court based ruling on erroneous ground; pivotal fact question remained unresolved; cause reversed and remanded with directions to enter findings of fact); *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 621-23, 378 N.E.2d 1318 (trial court ruled on validity of arrest but not on legality of unrelated search; reversed and remanded for finding on whether search was consensual).) When, as in the case at bar, the record reveals that the decision below was not erroneous, the trial court's failure to articulate its findings pursuant to section 114—12(e) will not be considered reversible error. See *People v. Dickerson* (1979), 69 Ill. App. 3d 825, 829, 387 N.E.2d 806.

■■ Defendant's second contention on appeal is that he was denied the effective assistance of retained counsel. In *People v. Talley* (1981), 97 Ill. App. 3d 439, 422 N.E.2d 1084, we held that the effectiveness of counsel, retained or appointed, is to be measured by one standard: whether the attorney is actually incompetent, as reflected in the performance of his

duties as a trial attorney, and whether that incompetence produced substantial prejudice to the defendant such that the outcome of the trial was probably changed. (97 Ill. App. 3d 439, 442-43.) Defendant has identified two instances of his retained counsel's alleged incompetence. Investigator Ford, in his testimony, related that a computer terminal provided information regarding license plate numbers SAL 547 and SAL 567. The State argued in closing that the license plate information corroborated Gail Anderson's identification of defendant since the license number that Anderson recalled was, after correcting one digit, the same as that on a car that had been independently linked to defendant. Defendant correctly points out that evidence of computer-generated records is inadmissible hearsay unless a proper foundation is laid for admission as a business record. (See *Grand Liquor Co. v. Department of Revenue* (1977), 67 Ill. 2d 195, 202, 367 N.E.2d 1238; *Department of Mental Health v. Beil* (1976), 44 Ill. App. 3d 402, 409, 357 N.E.2d 875; see also Ill. Rev. Stat. 1979, ch. 110A, par. 236.) Defendant argues that his counsel's failure to object to evidence of the computer records demonstrates incompetence and that his defense was thereby prejudiced.

■■ The "altered outcome" portion of the test set forth in *Talley* disposes of this allegation of incompetence. According to defendant's argument, an effective attorney would have objected to Ford's reference to the license plate information. Had such an objection been made and sustained, the State could easily have laid the foundation for the computer records, following the guidelines set out in the *Biel* case. (44 Ill. App. 3d 402, 409.) It follows that the failure to object did not prejudice defendant and cannot be grounds for reversal.

Defendant's second instance of alleged incompetence centers on his trial attorney's failure to impeach James Ollie with evidence of prior inconsistent statements made to Investigator Ford. Defendant argues that if Ollie's credibility had been undercut, the only evidence linking defendant to the robbery would be Gail Anderson's identification. Defendant contends that his trial counsel demonstrated incompetence by failing to lay a foundation for the impeachment of Ollie. This misstates the record. Defendant's trial counsel attempted to impeach Ollie on two points: whether he originally told police that he and Cheryl went to the Roberts Motel (at trial he testified it was the L & M Motel) and whether he said he had "many" drinks (he testified to two drinks). In both instances Ollie adhered to his trial testimony and denied he told police otherwise. (At one point an objection as to foundation was interposed, but this objection related to the foundation for Ollie's conversation with police. Ollie's denial of the statements was already before the jury so the objection was inconsequential.) What defense counsel failed to do was complete the

impeachment by eliciting from Ford testimony that Ollie's pretrial statements conflicted with his testimony.

There are two reasons why we cannot find that this omission amounted to ineffective assistance of counsel. First, nothing in the evidence suggests that Ollie's prior statements to police were inconsistent with his trial testimony. In order to find that defense counsel should have completed the impeachment, we are required to assume that there *was* a prior inconsistent statement for Ford to acknowledge. A finding of incompetence of counsel may not be based on mere conjecture. (See *People v. Hills* (1980), 78 Ill. 2d 500, 505-06, 401 N.E.2d 523.) Furthermore, neither alleged inconsistency is so material as to demand perfection of the impeachment. The omission may have been tactical, and matters of discretion or tactics cannot be the basis for a finding of ineffective assistance of counsel. See *People v. Smith* (1980), 81 Ill. App. 3d 764, 773, 401 N.E.2d 1017.

Defendant's third contention on appeal is that the trial court erroneously excluded certain testimony of Beverly Moore, defendant's wife. Mrs. Moore testified that when Ford first came to the apartment on April 3, "He said something about a robbery. He said yes, we know [Stevie Moore] didn't do it, but we think he might know the fellow who did it." The State's objection to this testimony was sustained and the jury was instructed to disregard it. Defendant's ostensible basis for admitting the testimony is the case of *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223. In *Rogers*, our supreme court held that if a party testifies to his out-of-court identification of the defendant, and if that party is subject to cross-examination, then a third party's testimony that he witnessed the first party's out-of-court identification is admissible to corroborate the first party's *in-court* identification of the defendant. (81 Ill. 2d 571, 579.) According to defendant's imaginative interpretation of *Rogers*, Beverly Moore is the third party who heard Ford, the first party, *fail* to make an out-of-court identification of defendant. The crucial portion of Ford's alleged out-of-court statement is "we know he didn't do it," and this statement, in defendant's view, tends to prove that Gail Anderson had *not* identified defendant prior to the arrest and lineup.

■■ Defendant altogether misuses *Rogers*. This court in *Rogers* held that evidence regarding the out-of-court identification is admissible only in corroboration of the in-court identification and not as substantive evidence. (81 Ill. 2d 571, 579.) Here, defendant intends not corroboration but impeachment: he attempts to diminish the reliability of Gail Anderson's identification of him as the robber. There is no need to contort the limited hearsay exception announced in *Rogers* to fit defendant's purpose since a procedure already exists—impeachment by prior inconsistent statement.

The person who identified defendant as the robber was Gail Anderson, not Charles Ford, and Anderson made no statement or identification inconsistent with her in-court identification and testimony.

If defendant was attempting to impeach Ford with Beverly Moore's testimony, the attempt was properly checked. Assuming, *arguendo*, that the statement related by Mrs. Moore was inconsistent with Ford's testimony that Anderson had identified defendant from a photograph, Ford was not confronted on cross-examination with the alleged statement and given an opportunity to explain it. (See *People v. Sanders* (1974), 56 Ill. 2d 241, 251, 306 N.E.2d 865, *cert. denied* (1974), 417 U.S. 972, 41 L. Ed. 2d 1143, 94 S. Ct. 3178.) Furthermore, even if defense counsel had followed the correct procedure in impeaching Ford, Mrs. Moore's testimony would still be inadmissible because Ford's answer on cross-examination would be conclusive. A witness may not be impeached on a collateral matter (*People v. Byer* (1979), 75 Ill. App. 3d 658, 669, 394 N.E.2d 632), and the question of whether Ford ever *said* that no one had identified the robber is surely collateral to the issue of whom the victim may have identified. The test of "collateralness" is whether the evidence in question could be introduced for any purpose other than contradiction of the witness. (75 Ill. App. 3d 658, 669.) In the instant case, the hearsay testimony of Beverly Moore regarding Ford's alleged statement had no independent evidentiary value. The trial court therefore correctly excluded the testimony.

Defendant's reliance on *People v. Thompson* (1981), 93 Ill. App. 3d 45, 416 N.E.2d 1105, a decision of this court that followed *Rogers*, is misplaced. In *Thompson*, we held that the trial court should have permitted the defendant to cross-examine a police officer regarding the victim's description of the robber. Here, defendant's cross-examination of Ford was not so limited. The case therefore has no application to these facts.

The judgment of the trial court is affirmed.

Affirmed.

HARTMAN, P. J., and DOWNING, J., concur.