(No. 60629.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ALBERT KRULL *et al.*, Appellees.

*Opinion filed July 17, 1985.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Michael E. Shabat, Joan S. Cherry and Peter D. Fischer, Assistant State's Attorneys, of counsel), for the People.

Miriam F. Miquelon, of Miquelon, Cotter & Daniel, Ltd., of Chicago, for appellee Krull.

James M. Obbish, of Bobb, Kane, Obbish & Propes, of Chicago, for appellee Lucas.

Louis B. Garippo, of Louis B. Garippo, Ltd., of Chicago, for appellee Mucerino.

JUSTICE MORAN delivered the opinion of the court:

Defendants were charged with various violations of the Illinois Vehicle Code (Ill. Rev. Stat. 1981, ch. 95½, par. 1—100 *et seq.*) (the Code). The charges stem from a July 1981 search of the Action Iron and Metal Company (Action Iron) which revealed the presence of several motor vehicles that allegedly had been stolen. Albert Krull, the licensee of Action Iron, was charged with six counts of failure to surrender title in violation of section 3—116(c) of the Code (Ill. Rev. Stat. 1981, ch. 95½, par. 3—116(c)). George Lucas, an employee, was charged with three counts of possession of a stolen motor vehicle and with possession of a false manufacturer's identification number in violation of sections 4—103(a)(1) and 4—103(a)(4) of the Code (Ill. Rev. Stat. 1981, ch. 95½, pars. 4—103(a)(1), 4—103(a)(4)). Salvatore Mucerino was charged with possession of a stolen motor vehicle, in violation of section 4—103(a)(1).

Defendants moved to suppress the evidence seized by

Chicago police officers during the search of the Action Iron premises. The circuit court of Cook County, after an evidentiary hearing, determined that the search had been conducted without a warrant and without probable cause. In addition the court found that Lucas' purported consent to the search was invalid. The State asserted, however, that the police had authority under section 5—401(e) of the Code (Ill. Rev. Stat. 1981, ch. 95½, par. 5—401(e)) to conduct the search. Section 5—401(e) authorizes warrantless administrative searches of the business premises of automotive parts dealers, scrap processors and parts recyclers. The circuit court concluded that section 5—401(e) was unconstitutional, and, finding no other basis upon which to sustain the search, granted defendants' motion. The appellate court, by order, vacated the circuit court's ruling and remanded the cause for further consideration. On remand, the circuit court again found the section at issue to be invalid and, therefore, granted the motion to suppress. The State now appeals directly to this court pursuant to our Rule 603 (87 Ill. 2d R. 603).

The primary issue concerns the constitutionality of the statutory inspection scheme authorized by section 5—401(e) in 1981 when the search took place. The Illinois Vehicle Code has subsequently been amended, and the inspection scheme, as amended, has been upheld by one court as constitutional. (*Bionic Auto Parts & Sales, Inc. v. Fahner* (7th Cir. 1983), 721 F.2d 1072.) The search here, however, occurred before the relevant amendments. The State contends that the warrantless inspection scheme authorized in 1981 by section 5—401(e) was constitutional. It argues, therefore, that the July 1981 search of Action Iron pursuant to section 5—401(e) was valid. Alternatively, the State asserts that the search was made in "good faith" reliance on the statute, which at the time had not been declared unconstitutional. As such, it argues that the search was valid re-

gardless of whether the statute is subsequently determined to be unconstitutional. In addition, it contends that the evidence seized on July 5, 1981, was the result of a valid consent search.

The record discloses that on July 5, 1981, at approximately 10:30 a.m., Leilan McNally, a Chicago police officer, observed tow trucks bring several vehicles inside the premises at Action Iron. McNally, who was assigned to inspect wrecking yards, entered the premises without a search warrant. Once inside, he met defendant Lucas. McNally identified himself, and asked Lucas if the yard was open for business. Lucas responded that it was, and stated that he was in charge of the premises. The other defendants were not present when McNally entered the yard. Defendant Mucerino arrived at Action Iron at about 11:30 a.m. Defendant Krull was not present while McNally was on the premises. McNally was later joined by two other police officers. They did not have a search warrant. None of the officers had procured arrest warrants.

According to McNally, he asked Lucas for the dealer's license and for the records of vehicle purchases. Lucas replied that he did not know where the license was located. Lucas did, however, produce a sheet of paper, which he stated was a list of all of the vehicles he had purchased. Five purchases were listed on the sheet of paper. McNally then asked Lucas if he could look at the cars in the yard. McNally testified that Lucas said, "Go right ahead."

Thereafter, McNally inspected the vehicles in the yard and made notations of the vehicles by serial number. He checked the serial numbers on a mobile computer in his squad car. Based on the computer check, he determined that the remnants of three vehicles in the Action Iron yard had been stolen. McNally testified at the suppression hearing that he also found another vehicle with its

vehicle identification number removed. He seized all four vehicles. McNally also placed Lucas under arrest. The other defendants were arrested at a later date.

Section 5—301 of the Code (Ill. Rev. Stat. 1981, ch. 95½, par. 5—301) requires dealers in used auto parts to be licensed. Under section 5—401(a) and administrative regulation, licensees must keep various records relating to the acquisition and disposition of vehicles and parts. Section 5—401(e) (Ill. Rev. Stat. 1981, ch. 95½, par. 5—401(e)), the section being challenged here, provided for the warrantless inspection of the records required to be kept by licensees and for the inspection of licensees' business premises. It stated:

> "Every record required to be maintained under this Section shall be opened to inspection by the Secretary of State or his authorized representative or any peace officer for inspection at any reasonable time during the night or day. Such inspection may include examination of the premises of the licensee's established place of business for the purpose of determining the accuracy of required records."

This is not the first case to address the constitutionality of the Code's administrative inspection scheme. On July 6, 1981, the day after the search under consideration here occurred, the Federal district court, in *Bionic Auto Parts & Sales, Inc. v. Fahner* (N.D. Ill. 1981), 518 F. Supp. 582, a civil rights action brought pursuant to 42 U.S.C., section 1983, held that section 5—401(e) was unconstitutional. The district court determined that section 5—401(e) vested excessive discretion in enforcement officers and did not define regular enforcement procedures. As such, the court held that the section failed to meet the standards for administrative searches established in *Donovan v. Dewey* (1981), 452 U.S. 594, 69 L. Ed. 2d 262, 101 S. Ct. 2534, and was invalid under the fourth and fourteenth amendments to the United States Consti-

tution.

Subsequently, the Code was amended by the Illinois General Assembly. These amendments, particularly section 5—403 (Ill. Rev. Stat. 1983, ch. 95½, par. 5—403), placed additional limits on the frequency and duration of the searches authorized by section 5—401(e). On appeal from the district court decision in *Bionic Auto Parts,* the Federal appellate court declined to address the constitutionality of the inspection scheme as it existed in 1981. Rather, it considered the present statutory provisions. The court held that the addition of sections 5—403 and 5—100—1 (Ill. Rev. Stat. 1983, ch. 95½, par. 5—100—1) "cured any unconstitutional taint which the Vehicle Code otherwise might have had." (*Bionic Auto Parts & Sales, Inc. v. Fahner* (7th Cir. 1983), 721 F.2d 1072, 1075.) Because the search here occurred prior to the effective date of sections 5—403 and 5—100—1, our inquiry is necessarily limited to consideration of the constitutionality of the search in terms of the statute as it then existed.

The fourth amendment to the United States Constitution (U.S. Const., amend. IV) and article I, section 6, of our State Constitution's bill of rights (Ill. Const. 1970, art. I, sec. 6) protect individuals against unreasonable searches and seizures. (*People v. Hoskins* (1984), 101 Ill. 2d 209, 214.) Administrative inspections are considered searches within the meaning of the fourth amendment. (*Donovan v. Dewey* (1981), 452 U.S. 594, 69 L. Ed. 2d 262, 101 S. Ct. 2534; *Camara v. Municipal Court* (1967), 387 U.S. 523, 18 L. Ed. 2d 930, 87 S. Ct. 1727.) Therefore, the rule that warrantless searches are generally unreasonable, and hence unconstitutional, applies to administrative searches, including the inspection of commercial business by government officials. (See *Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 312, 56 L. Ed. 2d 305, 311, 98 S. Ct. 1816, 1820; *See v. City of Seattle*

(1967), 387 U.S. 541, 546, 18 L. Ed. 2d 943, 948, 87 S. Ct. 1737, 1741.) However, some legislative schemes authorizing warrantless administrative searches have survived fourth amendment scrutiny. (See, *e.g.*, *United States v. Biswell* (1972), 406 U.S. 311, 32 L. Ed. 2d 87, 92 S. Ct. 1593 (firearms industry); *Colonnade Catering Corp. v. United States* (1970), 397 U.S. 72, 25 L. Ed. 2d 60, 90 S. Ct. 774 (liquor industry).) The Supreme Court has recognized that the assurance of regularity afforded by a warrant may be unnecessary where there has been a long and extensive regulatory presence in a certain industry. The court in *Donovan v. Dewey* (1981), 452 U.S. 594, 598-99, 69 L. Ed. 2d 262, 268-69, 101 S. Ct. 2534, 2538, explained:

> "[U]nlike searches of private homes, which generally must be conducted pursuant to a warrant in order to be reasonable under the Fourth Amendment legislative schemes authorizing warrantless administrative searches of commercial property do not necessarily violate the Fourth Amendment. [Citations]. The greater latitude to conduct warrantless inspections of commercial property reflects the fact that the expectation of privacy that the owner of commercial property enjoys in such property differs significantly from the sanctity accorded an individual's home, and that this privacy interest may, in certain circumstances, be adequately protected by regulatory schemes authorizing warrantless inspections."

The court in *Donovan v. Dewey* upheld a Federal statute which provided for the warrantless inspection of mines. In so doing, the court established criteria to determine whether a particular statutory scheme meets the test of reasonableness required by the fourth amendment. Initially, the court noted that Congress had a substantial interest in promoting mine safety and that a "system of warrantless inspections was necessary 'if the law is to be properly enforced and inspection made effective.' " (452 U.S. 594, 602-03, 69 L. Ed. 2d 262, 271, 101

S. Ct. 2534, 2540.) Moreover, the statute "in terms of certainty and regularity of its application, provide[d] a constitutionally adequate substitute for a warrant." (452 U.S. 594, 603, 69 L. Ed. 2d 262, 272, 101 S. Ct. 2534, 2541.) The court observed that the statute required inspection of all mines, defined the frequency of inspection, prohibited forcible entries, and required government officials to pursue civil remedies when refused entry to a mine. In addition, compliance standards were set forth in the statute and administrative regulations. The court concluded that since the "discretion of Government officials to determine what facilities to search and what violations to search for is thus directly curtailed by the regulatory scheme," the statute did not violate the fourth amendment. 452 U.S. 594, 605, 69 L. Ed. 2d 262, 273, 101 S. Ct. 2534, 2541.

There is certainly a strong public interest in preventing the theft of automobiles and the trafficking in stolen automotive parts. Any statutory scheme, like section 5—401(e), which helps facilitate the discovery and prevention of automobile thefts, furthers that strong public policy. (See *Northern Illinois Automobile Wreckers & Rebuilders Association v. Dixon* (1979), 75 Ill. 2d 53, 61.) In addition, we believe it reasonable to assume that warrantless administrative searches are necessary in order to adequately control the theft of automobiles and automotive parts. However, we disagree with the State that section 5—401(e), unencumbered by the recent amendments which we have alluded to earlier, provides a constitutionally adequate substitute for a warrant. Like the district court in *Bionic Auto Parts & Sales, Inc. v. Fahner* (N.D. Ill. 1981), 518 F. Supp. 582, we believe that the section vested State officials with too much discretion to decide who, when, and how long to search. The statute stated that searches could be conducted at "any reasonable time during the night or day." (Ill. Rev.

Stat. 1981, ch. 95½, par. 5—401(e).) This language is very similar to the provision found to be unconstitutional in *Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 309, 56 L. Ed. 2d 305, 309, 98 S. Ct. 1816, 1819. Since the statute did not provide for the regularity and neutrality required by the fourth amendment, we must conclude that the warrantless search conducted pursuant to the statute in force at the time (July 5, 1981) was unconstitutional, unless there is another basis upon which to uphold the search.

The State argues that the search here was valid even though the statute authorizing the search was unconstitutional. It asserts that the search and seizure made in "good faith" reliance on section 5—401(e), which at the time had not been declared to be unconstitutional, were valid regardless of the fact that the statute was subsequently found to be unconstitutional. The State, in essence, attempts to compare the present case to *Michigan v. DeFillippo* (1979), 443 U.S. 31, 61 L. Ed. 2d 343, 99 S. Ct. 2627, where the Supreme Court upheld an arrest and search made pursuant to an ordinance which was subsequently found to be invalid.

In *DeFillippo*, a Detroit ordinance made it unlawful for any person stopped by police to refuse to identify himself and produce evidence of his identity. The defendant was stopped pursuant to the statute. When he gave police a false identity, he was arrested and searched. Drugs were discovered in one of defendant's pockets and he was charged with possession of a controlled substance. The Michigan Court of Appeals declared the ordinance unconstitutional and ordered that the evidence seized during defendant's arrest be suppressed. The Supreme Court reversed, holding that the arrest based on probable cause and in good-faith reliance on the ordinance was valid, despite the subsequent determination that the ordinance was unconstitutional. The court con-

cluded that any search that was conducted incident to the arrest also was valid. 443 U.S. 31, 35-38, 61 L. Ed. 2d 343, 348-50, 99 S. Ct. 2627, 2630-32.

In holding the search constitutional, however, the Supreme Court in *DeFillippo* distinguished between substantive laws, which define criminal offenses, and procedural laws, which directly authorize searches. An arrest and search conducted pursuant to a substantive law, like the Detroit ordinance, will be upheld, provided the officer has probable cause to make the arrest and he relied on the statute in good faith. In contrast, an arrest and search made pursuant to a procedural statute, not yet declared unconstitutional, and which authorizes unlawful searches, will not be upheld, even though the arrest and search were made in good-faith reliance on the statute. (443 U.S. 31, 39, 61 L. Ed. 2d 343, 351, 99 S. Ct. 2627, 2633; see, *e.g., Torres v. Puerto Rico* (1979), 442 U.S. 465, 61 L. Ed. 2d 1, 99 S. Ct. 2425 (search of airport luggage pursuant to statute that authorized such searches without a warrant and without probable cause violates fourth amendment); see generally Comment, *Constitutional Law: Search and Seizure—The Role of Police Officer Good Faith in Substantive Fourth Amendment Doctrine* (1980), 55 Wash. L. Rev. 849, 865-66.) The court continues to utilize the substantive-procedural dichotomy in determining whether a search conducted pursuant to a statute was valid. *United States v. Leon* (1984), 468 U.S. 897, 911-12, 82 L. Ed. 2d 677, 691, 104 S. Ct. 3405, 3415-16; see, *e.g., Ybarra v. Illinois* (1979), 444 U.S. 85, 62 L. Ed. 2d 238, 100 S. Ct. 338.

Section 5—401(e), unlike the Detroit ordinance in *DeFillippo*, did not define a substantive criminal offense. Rather, it directly authorized warrantless searches. Thus, section 5—401(e) is included in the category of statutes which the Supreme Court has defined as procedural. Any good-faith reliance on such a statute will not

cure an otherwise illegal search. See, *e.g., Almeida-Sanchez v. United States* (1973), 413 U.S. 266, 37 L. Ed. 2d 596, 93 S. Ct. 2535; *Sibron v. New York* (1968), 392 U.S. 40, 20 L. Ed. 2d 917, 88 S. Ct. 1889; *Berger v. New York* (1967), 388 U.S. 41, 18 L. Ed. 2d 1040, 87 S. Ct. 1873.

The State also contends that defendant Lucas validly consented to the search of the Action Iron premises. A search conducted with a defendant's valid consent does not violate the fourth amendment. The validity of a consent search depends on whether the consent was voluntarily given. (*People v. Bean* (1981), 84 Ill. 2d 64, 69.) The rule for determining the voluntariness of a consent to search is that it must be shown that consent was not the result of duress or coercion, express or implied, but was in fact freely given. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2059.) Whether consent has been voluntarily given is a question of fact to be determined by the trial court, and that determination will be accepted by the reviewing court unless it is clearly unreasonable. *People v. DeMorrow* (1974), 59 Ill. 2d 352, 358.

The search here commenced when Officer McNally entered the Action Iron premises and ordered Lucas to produce the license and records required to be kept under section 5—401(a). He testified that he entered the premises solely on the basis of section 5—401(e), which we have today held to be invalid. He did not have a warrant or probable cause. None of the defendants consented to his entering the premises. Nor does the State contend that Lucas voluntarily consented to inspection of the records. The State instead argues that Lucas consented to a continuation of the search after the officer had entered the premises and inspected the records. Based on the fact that Lucas purportedly consented midway through the search, and other factors, the trial

court concluded that Lucas' consent was involuntary. It determined that Lucas had merely acquiesced to what he thought the officer had a right to do under section 5—401(e). Our review of the record convinces us that the trial court's determination was not unreasonable. The trial court made its decision after considering all the facts surrounding the search. Such a factual determination is entitled to deference by the reviewing court. See *People v. DeMorrow* (1974), 59 Ill. 2d 352, 358.

For the reasons given, the circuit court's order granting defendants' motion to suppress is affirmed.

*Judgment affirmed.*