THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RICHARD S. DAUGHERTY, Defendant-Appellee.

Second District   No. 2—86—0814

Opinion filed October 1, 1987.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner and Judith M. Pietrucha, Assistant State's Attorneys, and William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

William J. Ulrich, Jr., of Guerard, Kalina, Musial, Ulrich & Varchetto, of Wheaton, and Terry A. Ekl, of Connolly & Ekl, P.C., of Clarendon Hills, for appellee.

JUSTICE REINHARD delivered the opinion of the court:

This is an interlocutory appeal by the State pursuant to Supreme Court Rule 604(a) (107 Ill. 2d R. 604(a)) from a pretrial order suppressing all evidence seized from and statements made by defendant, Richard S. Daugherty, which the trial court found resulted after a consent to enter his residence was given by his wife due to an improper subterfuge employed by the police. The only issue before us is whether the trial court's ruling suppressing this evidence was manifestly erroneous.

Defendant was charged with the unlawful possession of more than 30 grams but not more than 500 grams of a substance containing cannabis (Ill. Rev. Stat. 1985, ch. 56½, par. 704(d)). Defendant filed multiple motions to suppress statements and evidence contending, in part, that the evidence seized and statements given followed an illegal

entry into his residence without a warrant and without consent. At a hearing on the motions, the following relevant testimony was adduced.

Defendant's wife, Karen Daugherty, testified that at approximately 7:30 p.m. on January 4, 1986, a Saturday, she was at the home occupied by her husband, her two children, and herself when she was visited by Officer David Barts of the Hanover Park police department. He informed her that he was a juvenile officer and had some more questions about a theft of money from her house on December 23, 1985, which she reported on December 26. Previously, one police officer had come shortly after the reported theft and another officer came a few days later. At the time Barts arrived, she felt that the theft case had been solved because the parents of their baby-sitter on the evening of the theft felt responsible and had promised to return the money. Barts asked to come in, and, although she refused, he came in anyway. He ordered her to show him where the money was taken from, and, after doing so, he asked to be shown where other money was kept around the house. When she took him into the kitchen, Barts saw marijuana on the counter and seized it. The officer then called another officer, and they searched the house. She further testified that after Barts threatened to take her children from her if she did not cooperate, she turned over to them some marijuana which was in a robe she had been wearing.

Officer Barts testified that he is a detective and juvenile police officer and went to defendant's home on January 4, 1986, both to talk about the theft report and to find out if drugs or marijuana were in the home. From reading other officers' reports about the theft and talking with defendant's baby-sitter, he received information concerning marijuana being in the residence. Also, in talking with the baby-sitter, he had learned that another girl was with her on the night the money was reported stolen. The baby-sitter had denied either had taken the money. Barts testified that he did not know that other officers had been to defendant's house, nor did he speak with the officer who made out the initial theft report. When he went to defendant's home that evening, he radioed to the patrol officer assigned to that area that he might need his assistance and to remain available.

When he arrived at the defendant's residence, he identified himself, showed Mrs. Daugherty his badge, and said he was there to talk with her about the theft she had reported. She agreed to talk and he went into the home. They sat down in the dining room and discussed the theft case. He asked to see where the money was taken from and was shown to the master bedroom. They then went into the kitchen

and talked. He observed marijuana on the counter. He seized it and called for the other officer to come to the house. After the other officer arrived, Mrs. Daugherty made some telephone calls. Then, Barts asked if there was any more marijuana, and she took some marijuana from a robe she had been wearing. At that point defendant arrived, and he became upset. He was advised of his *Miranda* rights and, at the officers' request, informed them of additional marijuana in the bedroom closet, which defendant turned over to them. Defendant also turned over a scale and some pipes. He was then arrested. His wife was not arrested or subsequently charged with a crime.

Barts testified that he did not have a search warrant for defendant's residence, nor did he request defendant's wife to sign a consent to search form. He also admitted that, prior to going to the defendant's home, he had read a police report of the theft which indicated that $100 was stolen from a dresser within the home.

Officer Mark Gatz testified that he was the backup officer and was told by Barts that he was going to interview someone about a theft case and that he had information that a lot of "dope" was in the residence.

Following the hearing, the trial judge specifically stated that he found the real reason Officer Barts went to defendant's residence was to investigate if marijuana was present in the home and that the theft investigation was merely a ruse on the part of the officer. He further found that defendant's wife consented to Barts' entry because of the ruse only, not that the officer forced his way into the home. The motions to suppress were granted.

The State contends the trial court's finding that the officer used a ruse in obtaining permission to enter the home was in error, as the evidence shows that he went to the home for two reasons, to investigate the theft and to check the claim that marijuana was in the home. Further, the State argues that the consent to enter was still voluntary despite Barts' "less than candid reasons for his entry." Once inside the house, the State posits, Barts was entitled to seize the marijuana which was in plain view and to arrest defendant for possession of the marijuana as an owner of the home.

■ A reviewing court will not disturb a trial court's finding in a hearing on a motion to suppress evidence unless the trial court's finding was manifestly erroneous. (*People v. Neal* (1985), 109 Ill. 2d 216, 218, 486 N.E.2d 898; *People v. Long* (1983), 99 Ill. 2d 219, 231, 457 N.E.2d 1252.) Considering first the trial court's finding that Officer Barts used a ruse or subterfuge in obtaining permission from defendant's wife to gain entry into defendant's home, we find that there is

ample evidence to support this finding.

As stated by the trial judge, there was no reason to go unannounced to the home that evening to further investigate the theft. There was a police report on file indicating the details of the theft and where the money was taken from. There was no need to doubt this fact or to go to the home again to check out this aspect of the investigation. Barts made no effort to talk with other officers about the theft case. Moreover, Barts had previously determined that the possible suspects in the theft case were the defendant's baby-sitter and her friend. It is apparent that the only reason for the visit was because the former baby-sitter told Barts that marijuana was in the house. Further, it is obvious that the backup police officer was available not for any purpose relating to the theft investigation, but only in case he was needed for assistance in the event marijuana was discovered.

■ Although Officer Barts testified that he had a dual purpose in going to the home that evening, the trial judge specifically rejected this testimony, finding that the theft investigation explanation which he gave to defendant's wife to gain entry was a subterfuge and that the real reason he was there was to determine if marijuana was in the home. At a hearing on a motion to suppress, it is the trial court's function to weigh the credibility of the witnesses and to resolve any conflict in their testimony. (*People v. Lucas* (1986), 140 Ill. App. 3d 1, 11, 487 N.E.2d 1212; *People v. O'Neill* (1985), 135 Ill. App. 3d 1091, 1099, 482 N.E.2d 668.) On this record, we conclude that the trial judge's finding on this issue was not manifestly erroneous.

■ Next, we must determine whether, under the circumstances here, the use of a subterfuge in order to obtain defendant's wife's permission to enter the home rendered her consent involuntary. The validity of a consent to enter another's residence depends on whether the consent was voluntarily given. (*People v. Bean* (1981), 84 Ill. 2d 64, 69, 417 N.E.2d 608.) That consent need not be given by defendant; it may be obtained from a third party who has control over the premises. (84 Ill. 2d 64, 69-70, 417 N.E.2d 608.) The standard for a valid consent that has been applied in a variety of circumstances, such as to enter a residence or conduct a search, is the same as that for a confession, that is, whether it is voluntarily given. (See *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S .Ct. 2041; *People v. Bean* (1981), 84 Ill. 2d 64, 69, 417 N.E.2d 608.) The rule for determining the voluntariness of a consent is that it must be shown that consent was not the result of duress or coercion, express or implied, but was, in fact, freely given. See *People v. Krull* (1985), 107

Ill. 2d 107, 119, 481 N.E.2d 703, *rev'd on other grounds* (1987), 480 U.S. ____, 94 L. Ed. 2d 364, 107 S. Ct. 1160.

■■ Voluntariness of a consent depends on the totality of the circumstances, and it is the State's burden to demonstrate that the consent was voluntarily given. (*People v. Koniecki* (1985), 135 Ill. App. 3d 394, 401-02, 481 N.E.2d 973; see *Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 20 L. Ed. 2d 797, 802, 88 S. Ct. 1788, 1792.) Whether consent has been voluntarily given is a question of fact to be determined by the trial court, and that determination will be accepted by the reviewing court unless it is clearly unreasonable. *People v. Krull* (1985), 107 Ill. 2d 107, 119, 481 N.E.2d 703, *rev'd on other grounds* (1987), 480 U.S. ____, 94 L. Ed. 2d 364, 107 S. Ct. 1160.

■■ Under some circumstances, where the official has obtained consent by means of deception, it has been held that there is coercion and the consent is invalid. (*Bumper v. North Carolina* (1968), 391 U.S. 543, 548-50, 20 L. Ed. 2d 797, 802-03, 88 S. Ct. 1788, 1792 (consent obtained from defendant's grandmother, the owner of the home, after policeman claimed that police had a search warrant, the existence of which was not shown).) As noted by Professor Wayne R. La-Fave in his respected treatise on the fourth amendment, while some forms of deception engaged in by a known law enforcement officer in order to obtain a consent may not invalidate the consent, the "fairness" of the type of deception employed in the particular circumstance is particularly relevant. (See 3 W. LaFave, Search & Seizure sec. 8.2(n) (1987).) As stated in *People v. Moore* (1981), 105 Ill. App. 3d 264, 268, 434 N.E.2d 300, "the concept of voluntariness must accommodate a complex of values ranging from society's need for effective police investigations to fundamental notions of fairness." While it may be difficult to ascertain the actual motive of the police officer when a subterfuge is used to obtain a consent to enter premises, if the evidence-finding motive is so overpowering, then the police conduct offends the fourth amendment. See 2 W. LaFave, Search & Seizure sec. 6.7(d) (1987).

For example, deception employed by police in falsely informing a defendant that another has given a statement naming him as the "triggerman" has been held not to invalidate a subsequent confession as a matter of law, but is one factor to consider when making a determination of voluntariness. (*People v. Martin* (1984), 102 Ill. 2d 412, 427, 466 N.E.2d 228.) This court has held that consent to enter a home where the police informed a defendant's mother that they wanted to talk with defendant about an "incident" when they were investigating a murder was not the type of deception which would vi-

tiate her voluntary consent to enter the premises. (*People v. Cooney* (1985), 136 Ill. App. 3d 989, 993-94, 484 N.E.2d 802.) The fact that a subterfuge is used by identifiable police officers to get the defendant to leave his home in order to effect an arrest outside the home (*People v. Moore* (1981), 105 Ill. App. 3d 264, 434 N.E.2d 300) or to conduct a search of the home pursuant to a warrant (*People v. Sunday* (1982), 109 Ill. App. 3d 960, 441 N.E.2d 374) has been held not to violate fundamental fairness. It is also well recognized that deception used by an undercover police officer or police agent to gain consent to enter into an area protected by the fourth amendment does not vitiate the consent where the individual giving consent is aware that he will reveal either criminal conduct or evidence of such conduct. 3 W. LaFave, Search & Seizure sec. 8.2(n) (1987); see *People v. Walker* (1964), 30 Ill. 2d 213, 195 N.E.2d 654.

However, in the case at bar, the trial judge found that Officer Barts' real reason for going to defendant's residence was to go inside and search for evidence of a crime and that the theft investigation was a subterfuge to gain consent to enter the premises. Although defendant's wife testified that Barts forced his way into the home, the trial court did not so find, and it appears from Barts' testimony that consent was given because of his misrepresentation of his official reason for the entry.

■ Where, as here, the law enforcement officer without a warrant uses his official position of authority and falsely claims that he has legitimate police business to conduct in order to gain consent to enter the premises when, in fact, his real reason is to search inside for evidence of a crime, we find that this deception under the circumstances is so unfair as to be coercive and renders the consent invalid. (See *Bumper v. North Carolina* (1968), 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788.) This police conduct offends the fourth amendment and is fundamentally unfair when compared with the need for effective police investigation. The decision of the trial court is neither clearly unreasonable nor manifestly erroneous. For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

LINDBERG, P.J., and NASH, J., concur.