THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHNNY N. LANE, Defendant-Appellant.

Second District   No. 80-780

Opinion filed June 2, 1982.

Ralph Ruebner, Mary Robinson, and John R. Wimmer, all of State Appellate Defender's Office, of Elgin, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Barbara A. Preiner, Assistant State's Attorney, and Phyllis J. Perko and Nancie Hudell, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Johnny N. Lane, was convicted of rape (Ill. Rev. Stat. 1979, ch. 38, par. 11—1) and sentenced to six years' imprisonment. He appeals contending that the trial court erred in: (1) denying his motions to suppress his confessions; (2) denying him the opportunity to present statistical evidence demonstrating black jurors were excluded from the jury pool; (3) denying his motion for a continuance; (4) allowing introduction of evidence inferring defendant had committed other crimes; and (5) denying disclosure of notes made by an assistant State's Attorney during an interview with the prosecutrix.

Evidence adduced at trial disclosed that on November 20, 1979, de-

fendant and Jennifer _____ were students at North Central College in Naperville and had been acquainted for about two months. While on a date with another man that afternoon, she saw defendant, who asked her to stop by his room after her date to say goodbye because of the vacation period commencing the next day, and she agreed to do so. Jennifer and Billy Hawkins went to defendant's dormitory at 11 p.m. and, after the three visited for about 15 minutes, Hawkins left to see a friend in the dormitory next door, saying he would return in 20 minutes. Jennifer said she would wait for Hawkins in defendant's room and sat with him on his bed watching television and discussing football. Sherry Auclair, another student, stopped in, and after a short visit she also left defendant's room.

Jennifer testified that when defendant turned off the light and began kissing and hugging her she told him to stop and pushed him away. She attempted to leave the room, but he grabbed her and she struggled and screamed. She testified defendant choked her until she lost consciousness, and when she recovered he said he would use a knife on her if she did not cooperate. He then forced her to remove her clothes and engaged in intercourse with her on the bed. She was wearing a tampon while this occurred.

Michael Hende and Steven Beaty testified that at the time in question they were in Hende's room next door and heard a scream and the sound of glass breaking. They ran into the hall and from there heard a scream coming from defendant's room and someone say "get your hands off me, leave me alone." The noise stopped and they returned to Hende's room without investigating further. Ten minutes later they heard a bumping noise against the wall which they thought might be a couple "fooling around."

Billy Hawkins returned during this time period and asked defendant, who came to the door in response to his knock, if Jennifer was ready to leave. Defendant told him to return in about 30 minutes. The lights in the room were off, and Hawkins heard no screams or outcries. When Hawkins returned later Jennifer left with him. She was crying and told Hawkins that defendant had raped her after threatening her with a knife and choking her; she required his assistance to walk to her dormitory. Jennifer went to the room of friends where defendant appeared with a coat she had left in his room; he repeatedly said he was sorry. Jennifer was examined at a hospital and the doctor observed bruises on her neck and recovered a tampon during the pelvic examination which was described as being compressed. Photographs of Jennifer were offered in evidence which disclose a broad band of red marks across her throat.

Defendant testified in trial that sexual activities had occurred between them, with her consent, and that the red marks on her neck were

caused by his kisses. He also testified they were social friends and had sexual relations on other occasions. Defendant's roommate testified Jennifer had visited defendant in his room on other occasions and he would then leave. Jennifer denied having ever gone out or having relations with defendant.

Also admitted in evidence was the testimony of Naperville police officers, Robert Murdock and Michael Cross, who had questioned defendant several hours after the rape complaint. They stated he orally admitted he had choked Jennifer and threatened her with a knife.

Letters written by defendant to Jennifer and Mary _____, another student at the college, after his arrest, were read to the jury. In his letter to Jennifer defendant stated, *inter alia*, that he knew that he had hurt her and was sorry; he asked her to drop the charges. In the letter to Mary, defendant mentioned he was in jail for raping Jennifer, stating, "I just lost my head" and did not know what he was doing.

Defendant made pretrial motions to suppress his confession which were denied by the trial court after hearing. Evidence was there offered that the Naperville police had received the rape complaint at 2 a.m. on November 21. They learned defendant had left the campus and called for the assistance of Chicago police as he resided in Chicago at 13099 South Drexel. At 4 a.m. Chicago police officers, Spiro Patros and Edward Murphy, were advised by telephone that an arrest warrant for rape had been issued in Naperville for defendant and were directed to proceed to his address and take him into custody. At about 5 a.m., after getting the approval of a felony review attorney, the officers went to the single-family residence where defendant resided with his mother, brother and sisters and knocked on the door. An adult woman, apparently defendant's mother, answered and the officers inquired whether Johnny Lane lived there and if he were at home. The woman responded that defendant was there and the officers asked if they could come in. She thereupon opened the door for them and identified defendant who was lying on a couch. When the officers asked defendant to step outside of the house, the woman stated they could talk to him inside, but the officers declined. Outside of the house the officers advised defendant of his *Miranda* rights and that a warrant for rape had been issued against him. He was handcuffed and transported to the Chicago 5th district police station and subsequently to the men's detention center. Officers Murdock and Cross of the Naperville police arrived and questioned defendant at 10:15 a.m. and testified at trial he then admitted to the use of force.

Defendant testified at the suppression hearing that while being transported to the 5th district station he asked the arresting officers if he could see a lawyer and they responded that was possible. Defendant also testified that at the station he asked two other police officers to see a lawyer

and was advised that would be taken care of at the men's detention center. He further testified that he asked police officers for an attorney again at the detention center and that during his questioning by the Naperville officers, when he requested to see an attorney, he was told he could not do so. Defendant's mother testified she was present at the 5th district station and heard defendant tell the officers that he wished to see an attorney.

Officer Murdock, when called by the State at the hearing of the motions to suppress, denied defendant requested to see a lawyer in his presence. After defendant and his mother testified, defendant rested as to his motions and the trial judge thereupon called for oral argument. The assistant State's Attorney advised the court that the State was entitled to and needed to have rebuttal of the testimony relating to a request for an attorney, but defendant's counsel objected, and the trial judge proceeded to hear defendant's arguments on the merits of the motion without any rebuttal evidence by the State. After argument, the court denied defendant's motions.

Defendant contends first that the trial court erred in admitting evidence of his confession made following his request for counsel. (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602; *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880.) The State confesses error, noting that the testimony of defendant and his mother that he had made such a request was not rebutted in the trial court. The State asserts, however, that the error may be considered harmless in light of the other evidence of defendant's guilt and, alternately, if determined to be not harmless, that we remand to the trial court to give the State an opportunity to present the rebuttal testimony denied it at the suppression hearing.

In *People v. Black* (1972), 52 Ill. 2d 544, 555, 288 N.E.2d 376, 383, *cert. denied* (1973), 411 U.S. 967, 36 L. Ed. 2d 689, 93 S. Ct. 2155, the court noted:

"In considering whether constitutional error constitutes harmless error beyond a reasonable doubt as required by *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, it is not enough that the erroneously admitted evidence be considered merely cumulative or that there be other evidence in the record sufficient to support the conviction. [Citations.] The inquiry of a court of review should not be as to the amount of untainted evidence as compared to the amount of tainted evidence. The focus should rather be upon the character and quality of the illegally obtained evidence as it relates to the other evidence bearing on the same issue and the court should appraise the possible impact upon the jury of the wrongfully obtained evidence. [Citation.]"

See also *People v. Hansen* (1980), 90 Ill. App. 3d 407, 408, 413 N.E.2d 103, 105, *cert. denied* (1981), ___ U.S. ___, 70 L. Ed. 2d 136, 102 S. Ct. 167.

■■ In the final analysis of all of the evidence offered to the jury in this case it had to decide whether Jennifer's testimony was more or less credible than defendant's testimony she had consented. While her testimony was corroborated by certain of the surrounding circumstances, there is little evidence which may impact more adversely upon a jury than a defendant's confession. Under all of the circumstances of this case, we are unable to conclude that the admission of the illegally obtained confession was harmless beyond a reasonble doubt. See *People v. Washington* (1977), 68 Ill. 2d 186, 194, 369 N.E.2d 57, 60-61, *cert. denied* (1978), 435 U.S. 981, 56 L. Ed. 2d 72, 98 S. Ct. 1631; *People v. Henenberg* (1973), 55 Ill. 2d 5, 12, 302 N.E.2d 27, 30.

■■ By the denial of rebuttal the State was foreclosed from bringing in the testimony of those officers to whom defendant stated he had requested an attorney and the incomplete hearing made inevitable the State's ultimate confession of error. There can be no question that the State had a right to present evidence answering or contradicting the new affirmative matters raised by the defense during the presentation of its case. (*People v. Harvey* (1980), 92 Ill. App. 3d 465, 470, 415 N.E.2d 1161, 1165.) This substantial right was erroneously denied by the trial court and we conclude the cause must be remanded in order to give the State an opportunity to call rebuttal witnesses in further hearings of defendant's motion to suppress. See *People v. Berg* (1977), 67 Ill. 2d 65, 70, 364 N.E.2d 880, 882; *People v. Simmons* (1975), 60 Ill. 2d 173, 181-82, 326 N.E.2d 383, 387; *People v. Mertens* (1979), 77 Ill. App. 3d 791, 802, 396 N.E.2d 595, 605.

Defendant next contends the trial court erred in denying his motion to suppress the confession as the fruit of his warrantless arrest in his home absent either exigent circumstances or consent to enter. (*Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371; *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248.) We conclude that defendant's arrest, based upon probable cause and with consent for the officers to enter the home, met the *Payton* standard.

Officers Patros and Murphy of the Chicago Police Department had been advised through regular police channels (see *People v. Kahl* (1978), 63 Ill. App. 3d 703, 707-08, 380 N.E.2d 487, 491) that a warrant had been issued (or was in the process of being issued) in Naperville for defendant's arrest for rape and had also been given his home address in Chicago. They were further given a description of defendant's car which they located near his home. The officers, who were in uniform, knocked on the front door of the home at about 5 a.m. and an adult woman responded. They inquired whether Johnny Lane lived at that address and the woman

said that he did. The officers asked if he were home and, when she responded he was, asked further whether they could come in. The woman then opened the door and let them in. When they entered the house she pointed out defendant who was lying on a couch. The officers asked defendant if he was Johnny Lane and, when he responded that was true, asked him to step outside of the home and there advised him of his *Miranda* rights.

Defendant does not now suggest the officers lacked probable cause to arrest him, and it is apparent that the facts within their knowledge were sufficient for them to so act. (See, *e.g., People v. Sanford* (1980), 85 Ill. App. 3d 1010, 1012, 407 N.E.2d 810, 812.) We find *People v. Bean* (1981), 84 Ill. 2d 64, 69-70, 417 N.E.2d 608, 611, *cert. denied* (1981), ___ U.S. ___, 70 L. Ed. 2d 93, 102 S. Ct. 106, dispositive of the issue of consent. There four police officers investigating an armed robbery went to defendant's apartment at 8 a.m. without a warrant, but having sufficient facts to constitute probable cause for his arrest. Two officers knocked on the front door and defendant's mother responded. The officers showed her their badges and said, "Police officers, we want to see Jimmy." Defendant's mother asked them into the vestibule where the officers waited while she put on a robe. When she returned they again stated they wanted to see defendant. She asked the officers to wait while she got him, but when they saw defendant emerge from a bedroom they arrested him at gun-point.

The present case is inapposite from *Bean* only in that here permission to enter the home was not verbalized. In *Bean*, a person having apparent control over the premises orally invited the officers to come in after they had identified themselves and stated the reason they were there. Here, the woman who responded to the officers' knock on the door opened it for them to enter after they asked whether they could do so. Defendant relies upon *People v. Montgomery* (1980), 84 Ill. App. 3d 695, 701-02, 405 N.E.2d 1275, 1281, for the proposition that "mere acquiescence to police authority does not necessarily establish consent," arguing that the woman merely opened the door and there was no evidence she gestured to the officers to come in. Defendant characterizes her conduct as acquiescence to authority, but not voluntary consent.

█▋ The burden was on defendant to establish the illegality of his arrest when he sought to use it as a basis for suppression of his confession. (*People v. Genus* (1979), 74 Ill. App. 3d 1002, 1007, 393 N.E.2d 1162, 1166.) In *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 248-49, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2059, the court stated that the test for a valid consent is voluntariness under the totality of the circumstances. No evidence was offered in this case that the woman answering the door in response to the officers' knock did not voluntarily consent to their entry.

They asked whether they could enter and she responded by opening the door to them. The officers' conduct was peaceful and their inquiry reasonable under the circumstances; there was no evidence they did anything to induce her to act against her will or that she did so. (See *People v. Genus* (1979), 74 Ill. App. 3d 1002, 1014, 393 N.E.2d 1162, 1167.) *Payton* permits a warrantless arrest in a private dwelling where consent to enter has been given. The officers must necessarily ask permission before entering if it is not offered, and, if the response is negative, may not do so absent exigent circumstances. We conclude the officers' warrantless arrest of defendant in his home comported with constitutional requirements.

Defendant contends next that the trial court denied him an opportunity to present statistical evidence in support of his claim there was an unlawful disparity between the percentage of black persons in Du Page County and the percentage of black persons comprising the pool from which his jury would be selected.

When the case was called for trial defendant's counsel orally advised the court that from a cursory observation he saw no black jurors in the jury pool and, as he knew there were black persons living in Du Page County, argued it must be presumed they had been excluded. Defendant thereupon moved for a change of plaintiff's trial to a location where black jurors would be available or a continuance of trial to a time when another jury pool containing black persons would be present. The trial court pointed out that the black population of the county was small and blacks appeared rarely in the jury pool because of the racial composition of the county, and not by reason of their exclusion. Defendant's motions were denied, whereupon his counsel advised the court:

> "MR. RICHMAN: Judge, just so the record will reflect, I did not have the opportunity to bring in statistics or sheets or voter polls because the motion was made on an oral motion today, and I didn't want the fact that I did not bring it in to be considered a waiver on behalf of all the information or getting statisticians or getting polls to show you and would take maybe a day for you to read all the exhibits and so forth, to corroborate the nature of the oral motion."

Defendant did not, however, offer any of the statistical evidence to which he referred in support of his apparent assertion that racial discrimination had affected the selection of prospective jurors.

■■ It is well established that such a claim must be supported by evidence, and counsel's "cursory observation" of the racial composition of the current jury pool was insufficient to present a *prima facie* case. (See *Castaneda v. Partida* (1977), 430 U.S. 482, 51 L. Ed. 2d 498, 97 S. Ct. 1272.) Defendant's present assertion he was denied an opportunity to submit statistical evidence is not supported by the record. At no time did he offer to do so, nor did he raise that issue in his post-trial motion. There,

he simply alleged that the trial court erred in denying his motion for change of venue "by virtue there were no Negroes or minorities to be selected from the jury *venire*." He did not, however, request an opportunity to present statistical data or any other evidence and cannot fairly be heard to argue he was denied an opportunity to do so.

Defendant also asserts he was prejudiced by the denial of his oral motion for continuance made when the case was called to trial on July 28, 1980, by reason of the late disclosure by the State of a letter written by defendant to a witness which was subsequently admitted in trial. The State had been directed to make disclosure of evidence to defendant by January 18, 1980, pursuant to Supreme Court Rule 412(a)(ii) (73 Ill. 2d R. 412(a)(ii)). The letter in question was first received from the witness by the State's Attorney on July 18 and a copy was on that day hand-delivered to defendant's counsel, together with the name and address of the witness. ■■ ■ It is apparent defendant's attorney had adequate opportunity before or during trial to investigate this matter; nor can he properly charge the State withheld evidence which was not in its possession. (*People v. Molsby* (1978), 66 Ill. App. 3d 647, 656, 383 N.E.2d 1336, 1343.) The grant or denial of a continuance is within the sound discretion of a trial court, and its refusal in this case did not inhibit the preparation of the defense to defendant's prejudice. See *People v. Harris* (1981), 95 Ill. App. 3d 1, 3-4, 419 N.E.2d 489, 491; *People v. Sedlacko* (1978), 65 Ill. App. 3d 659, 668, 382 N.E.2d 363, 371.

Defendant also contends the letter should have been excluded from evidence, or additional deletions made in it. He argues that his letter to Mary _____, when read together with his other letter in which he requested Jennifer to drop the charge against him, suggests that he was also requesting Mary to drop other pending criminal charges against him. ■■ Evidence which tends to show that an accused has committed unrelated crimes is incompetent and prejudicial. (*People v. Donaldson* (1956), 8 Ill. 2d 510, 517, 134 N.E.2d 776, 779.) We do not agree, however, that conclusion can reasonably be drawn from the letter to which defendant refers. In it he advised Mary he was in jail for raping Jennifer, stating he had lost his head and didn't know what he was doing. These expressions by defendant were clearly relevant to the case on trial and were of probative value. In the balance of the letter, other portions of which were deleted, defendant stated he wanted to get out of jail and finish school, and he asked Mary to release some of the pressure from him, requesting that she write to him and express her feelings. No inference was drawn in argument by the State that defendant's letter referred to other criminal charges against him. At most it appears to be an expression of regret for his conduct and a request for sympathy and communication from Mary. We do not find defendant was improperly prejudiced by the admission of

the letter. *People v. Gordon* (1981), 94 Ill. App. 3d 764, 767, 419 N.E.2d 66, 69; *People v. Price* (1979), 76 Ill. App. 3d 613, 633-34, 394 N.E.2d 1256, 1270.

Defendant finally contends the trial court erred in denying disclosure to him, pursuant to Supreme Court Rule 412(a)(i)(c) and (h) (73 Ill. 2d R. 412(a)(i)(c) and (h)), of handwritten notes made by an assistant State's Attorney during her initial interview with the prosecutrix. The State declined to produce the notes to defendant, asserting they constituted the work product of the State's Attorney and were exempt under Supreme Court Rule 412(j)(i) (73 Ill. 2d R. 412(j)(i)). The trial court reviewed the memorandum *in camera* and denied defendant's motion, finding they were personal notes and contained no new or different information than that already made available to defendant; it also found there was nothing in them favorable to the defendant.

This court has also examined the notes *in camera* and as we agree with the findings of the trial court, conclude it correctly denied defendant's motion. See *Consolidation Coal Co. v. Bucyrus-Erie Co.* (1982), 89 Ill. 2d 103, 110-11, 432 N.E.2d 250, 256-67.

Accordingly, the judgment of conviction and sentence thereon will be vacated and the cause remanded for further hearing of defendant's motion to suppress the confession, given after a request for counsel, at which the State will be allowed to offer the rebuttal testimony denied to it. The defendant may offer surrebuttal if he wishes to do so. If upon its consideration of all of the evidence presented at the hearings of the motion the trial court determines that defendant's confession was given by police initiative after he had invoked his right to counsel, it will grant defendant a new trial at which the confession will be excluded. If the court determines that defendant's right to counsel was not violated, it will enter a new judgment reinstating the conviction and sentence.

Judgment vacated and remanded with directions.

LINDBERG and UNVERZAGT, JJ., concur.