THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL J. KESSLER, Defendant-Appellee.

Second District No. 85—0085

Opinion filed September 18, 1986.

UNVERZAGT, J., dissenting.

James E. Ryan, State's Attorney, of Wheaton (Barbara A. Preiner and Judith M. Pietrucha, Assistant State's Attorneys, of counsel), for the People.

Dianne Ruthman, of James W. Reilley & Associates, of Des Plaines, for appellee.

JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Michael J. Kessler, was charged by information with the offenses of unlawful possession of a controlled substance (Ill. Rev. Stat. 1983, ch. 56½, par. 1402(b)) and unlawful use of weapons (Ill. Rev. Stat. 1983, ch. 38, par. 24—1(a)(4)). Prior to trial in the circuit court of Du Page County, the trial court granted defendant's motion to suppress physical evidence because defendant had not voluntarily consented to the search. The State filed a certificate of impairment and notice of appeal pursuant to Illinois Supreme Court Rule 604(a)(1) (103 Ill. 2d R. 604(a)(1)).

The State raises only one assignment of error in this court: the trial court improperly suppressed the evidence seized because defendant consented to the police officers' entry into the hotel room where the police observed the contraband in plain view. We reverse and remand.

The evidence indicated that on February 12, 1984, Officer John Marciniak was dispatched to the Hamilton Hotel in Itasca because of a complaint that a narcotics party was taking place in a suite occupied by Michael Kessler. Upon arriving at the hotel, the police officer confirmed at the front desk that Kessler was registered in suite 527. The officer and his partner, Officer Moersch, both dressed in full uniform, proceeded to the suite accompanied by two hotel security officers and the assistant manager of the hotel. Marciniak rang the doorbell, and defendant Kessler opened the door. The following colloquy from the suppression hearing describes the officers' entry into the hotel room.

"A. I asked the person who answered the door, who was a man dressed in a suit, if Michael Kessler was in the room. He indicated yes.

I asked him if he was Michael Kessler, he stated yes, and I proceeded to tell him why the police were at the suite.

Q. What did you tell him?

A. That we were investigating a complaint of a narcotics

party in this location.

Q. Okay. What was said at that point?

A. Mr. Kessler or the person who identified himself as Mr. Kessler stated that 'Can we talk about this?'

Q. Okay.

Now all of this conversation, sir, was taking place outside the room; is that correct?

A. I was standing outside the room. The door was open into the room with the gentleman standing by the door.

Q. At the time you were standing there talking with the person who identified himself as Michael Kessler, did you have any legal process in your possession, namely, a search warrant?

A. No.

Q. Now, after Mr. Kessler said, 'Let's talk about this,' or 'Can we talk about this,' what did you say?

A. I says, 'Yes, we can. I would like to talk about it in the room, though.'

Q. You said that?

A. Yes.

Q. Then what occurred?

A. Mr. Kessler backed up from the door, the door opened. All the personnel, meaning the five people, myself and the four other people, walked into the room, following Mr. Kessler.

Q. Just to be clearer, it was you who said, 'We have to talk about it in the room, though,' not Mr. Kessler?

A. I says, 'I would like to talk about it in the room.'

Q. You said that?

A. Yes.

Q. Mr. Kessler didn't say, 'I would like to talk about it in the room;' is that correct?

A. No he said, 'I want to talk about it, though.'

Q. Who walked in first?

A. Well, Mr. Kessler led. He was already in the room. I entered, then Officer Moersch, and I don't know in what order the hotel people were in.''

Upon entering the suite hallway, the officer immediately observed cocaine and paraphernalia used for cocaine on the table in the living room/dining room area. Once in the room, Officer Marciniak identified himself and those with him to the seven people present in the room. The officer proceeded to conduct a pat-down search of defendant's body, during which time defendant informed the police that he was wearing a gun in his waistband. After removing the weapon, the offi-

cer placed defendant under arrest for unlawful use of a weapon and contacted his police sergeant to inform him of what had occurred. Defendant verbally gave the officers permission to search the suite, and, in doing so, they found contraband in the living room and bedroom.

■ On a motion to suppress evidence, the defendant has the burden of proving that the search and seizure were unlawful. (Ill. Rev. Stat. 1983, ch. 38, par. 114—12(b).) It is well established that a trial court's ruling on a motion to suppress will not be set aside unless manifestly erroneous. *People v. Stout* (1985), 106 Ill. 2d 77, 88; *People v. Stewart* (1984), 105 Ill. 2d 22, 41, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 283, 105 S. Ct. 2666; *People v. Tisler* (1984), 103 Ill. 2d 226, 248; *People v. Hoskins* (1984), 101 Ill. 2d 209, 212, *cert. denied* (1984), 469 U.S. 840, 83 L. Ed. 2d 81, 105 S. Ct. 142.

■ An exception to the requirement of both a warrant and probable cause is a search that is conducted pursuant to consent. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 219, 36 L. Ed. 2d 854, 858, 93 S. Ct. 2041, 2043-44; *Payton v. New York* (1980), 445 U.S. 573, 590, 63 L. Ed. 2d 639, 653, 100 S. Ct. 1371, 1381-82.) The burden of proof is on the prosecutor to prove that the consent was voluntarily given and not the result of duress or coercion, expressed or implied. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 222, 36 L. Ed. 2d 854, 860, 93 S. Ct. 2041, 2045; *Bumper v. North Carolina* (1968), 391 U.S. 543, 548, 20 L. Ed. 2d 797, 802, 88 S. Ct. 1788, 1792.) Whether consent to a search was voluntary is a question of fact to be determined from the totality of all the circumstances, and while the accused's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate the defendant's knowledge as a prerequisite to establishing voluntary consent. (*Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 227, 36 L. Ed. 2d 854, 862-63, 93 S. Ct. 2041, 2047-48.) Illinois courts have consistently applied this test in determining the voluntariness of consent in fourth amendment rights cases. See *People v. Lentini* (1982), 106 Ill. App. 3d 695, 701 (and cases cited therein).

■ Under the totality of the circumstances presented here, we conclude that the trial court's determination that defendant's consent to the officers' entry into the hotel suite was not voluntary was manifestly erroneous. The officers arrived at defendant's door to investigate a complaint while dressed in full uniform and accompanied by two hotel security guards and another man. While defendant never verbally consented for the five men to enter the room, the officers did not directly ask for consent to enter the room, but, instead, an officer

responded to defendant's request to discuss the complaint by stating, "I would like to talk about it in the room, though."

The transaction at the hotel room door began with the police announcing their mission—the investigation of a complaint of a narcotics party in that location. Defendant responded with the expression of a desire to talk about the complaint. The police agreed conditioned on the discussion taking place in the room. Defendant acceded to the condition by his nonverbal conduct previously described. Reduced to its essence, defendant's conduct evidenced his intention that the police should enter the room for the purpose of the discussion which was requested by defendant. See *People v. Petersen* (1982), 110 Ill. App. 3d 647, 654; see also *People v. Lane* (1982), 106 Ill. App. 3d 793, 799-800.

The import of defendant's conduct, viewed objectively as expressing the intent of defendant at the time, was that the police should enter. A contrary interpretation of defendant's conduct, *i.e.*, that the police were not free to enter, is both untenable and unreasonable. See *People v. Krull* (1985), 107 Ill. 2d 107, 119.

In its oral findings the court found and concluded:

"Now, there would have to be consent not to enter, but *consent with a known relinquishment of rights*, and at this point, of course, there is no showing that there is consent. There certainly was no consent in the hallway and especially when the police officer indicated, 'Let's talk it over inside.' Certainly, that is no way of getting into a closed area, which is one of the Constitutional rights protected as to this defendant and all persons.

So therefore, the Court finds that there was no consent under the factual basis presented. Therefore, motion to suppress will be granted." (Emphasis added.)

Since the testimony of the police was not controverted or challenged, thus presenting no question of credibility, we conclude that the trial court erroneously determined that, without the State having demonstrated that defendant relinquished his fourth amendment right to privacy knowingly, defendants either did not consent or did not consent voluntarily. While the question of whether a defendant relinquished his consent knowingly is to be considered in determining voluntariness, it is only a factor. The totality of the circumstances is to be considered as we have previously discussed herein. *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 36 L. Ed. 2d 854, 93 S. Ct. 2041; *People v. DeMorrow* (1974), 59 Ill. 3d 352; see also 2 W. La Fave, Search & Seizure sec. 8.1, at 614-18 (1978).

Nor can defendant's physical actions be equated with acquiescence to police authority as in *Bumper v. North Carolina* (1968), 391 U.S. 543, 20 L. Ed. 2d 797, 88 S. Ct. 1788, where the Supreme Court found the consent to be grounded in the misrepresentation of the police that they had a search warrant. No such facts even remotely exist in the case at bar. The police made no representations regarding their authority other than what would be apparent to anyone viewing persons in police uniforms. See *People v. Stock* (1974), 56 Ill. 2d 461, 474.

We conclude that the police entry did not contravene fourth amendment limitations. It follows, then, that the police were properly in the room when they viewed that which they believed was illegal drug paraphernalia in plain view. Under these circumstances, they were entitled to seize the evidence, and it was error to grant the motion for suppression. *Illinois v. Andreas* (1983), 463 U.S. 765, 77 L. Ed. 2d 1003, 103 S. Ct. 3319; *People v. McNair* (1983), 113 Ill. App. 3d 8, *cert. denied* (1983), 464 U.S. 860, 78 L. Ed. 2d 164, 104 S. Ct. 185.

The judgment of the circuit court of Du Page County suppressing the evidence in question is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

STROUSE, J., concurs.

JUSTICE UNVERZAGT, dissenting:

I would affirm the trial court because under the totality of the circumstances presented here, the trial judge's determination that the defendant's consent to the officers' entry into his hotel suite was not voluntary was not manifestly erroneous. The officers arrived at the defendant's door to investigate a complaint while dressed in full uniform and accompanied by two security guards and another man. The defendant never invited the five men to enter the room. The officer did not ask to be admitted to the room but, instead, responded to the defendant's willingness to discuss the complaint by stating, "I would like to talk about it in the room, though." In light of this statement, it was reasonable for the defendant to infer that a demand had been made and that he had no choice except to back up to allow the men to enter, although Marciniak did not push the door open to gain entry. The officers never advised the defendant that he had the right to deny them permission to enter the suite, a factor which I believe was properly considered by the trial court but was not the sole basis for

its determination, as suggested by the State. Therefore, I agree with the trial judge that the defendant's consent was not voluntarily given because the defendant merely acquiesced to lawful authority.

The case of *People v. Lane* (1982), 106 Ill. App. 3d 793, relied upon by the majority, is neither factually close nor legally apposite to the case at hand and, therefore, does not control the disposition here.

Given the conclusion that the initial entry into the suite was illegal, this then is not a case where the contraband was recognized and seen in plain view and, therefore, subject to immediate seizure, as the State argues (*Illinois v. Andreas* (1983), 463 U.S. 765, 771, 77 L. Ed. 2d 1003, 1010, 103 S. Ct. 3319, 3324). For an item to be legally seized when in "plain view," the officer first must be on the premises properly under a warrant or an exception to the warrant requirement. (*People v. Koniecki* (1985), 135 Ill. App. 3d 394, 401.) Marciniak testified that he could not see the cocaine or paraphernalia until he entered the suite.

I would affirm the judgment of the circuit court of Du Page County.