*In re* M.N., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. M.N., a Minor, Respondent-Appellant).

First District (3rd Division)    No. 1—92—0316

Opinion filed December 30, 1994.

Rita A. Fry, Public Defender, of Chicago (Anne Myles Smith and Vicki Rogers, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Annette Collins, and Theodore R. Jamison III, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, M.N., was found guilty of possession of a controlled substance (Ill. Rev. Stat. 1991, ch. 56¹/₂, par. 1401(d)) and sentenced to one year's probation and 15 days' mandatory counseling. Defendant appeals the trial court's denial of his motion to quash arrest and suppress evidence. We affirm.

The sole issue before this court for review is whether the trial court erred in denying defendant's motion to quash arrest and suppress evidence.

During the hearing on the motion to quash arrest and suppress evidence, the State presented the testimony of Chicago police officer Mike Tannenhill. Officer Tannenhill testified that he and his partner were assigned to a beat near Crane High School in Chicago, Illinois, where they were supposed to patrol for gang activity and truants. Officer Tannenhill testified that at approximately 2 p.m. on May 8, 1991, while on routine patrol in a squad car, he observed a group of five teenagers standing in a lot outside Crane High School. Officer Tannenhill stated that he exited his vehicle, approached the group and spoke to defendant. Officer Tannenhill testified that he approached defendant and asked him for his school identification or any identification. Defendant was unable to present any identification. Officer Tannenhill further testified that when he asked defendant if he was supposed to be in school, defendant responded evasively. Officer Tannenhill stated that he then performed a protective pat-down search of defendant. Officer Tannenhill testified that he felt a lump in defendant's pants pocket, whereupon he asked defendant what was in his pocket. Defendant responded that the lump was a container of prescription drugs, whereupon defendant voluntarily removed a brown medicine vial from his pocket and handed it to Officer Tannenhill. When Officer Tannenhill received the vial, he noticed that it did not have a prescription label or a physician's name on it. Officer Tannenhill testified that he then asked defendant to name his doctor, but defendant was unable to do so. Officer Tannenhill then looked inside the vial and observed what he believed to be several "pony packs" of cocaine. Defendant was then arrested for possession of a controlled substance. Having presented this evidence, the State rested.

Defendant testified in his own behalf. Defendant told the court that he and approximately five other youths were standing at 2334 West Van Buren when a police officer exited from the passenger side of an unmarked police vehicle with his weapon drawn. Defendant testified that the officer stated: "Don't move." Defendant further testified that the police officer and his partner searched the members of the group at which time one of the officers discovered a brown medicine vial in his pocket. Defendant testified that the officer asked him what the vial was, to which he replied that it contained Theophylline pills for his asthma. Defendant further testified that the officer subsequently opened the vial, looked inside and arrested defendant. Having presented this evidence, the defense then rested.

The court subsequently denied defendant's motion to quash arrest and suppress evidence. Defendant appeals this order.

In *Terry v. Ohio* (1968), 392 U.S. 1, 22, 20 L. Ed. 2d 889, 906-07, 88 S. Ct. 1868, 1880, the United States Supreme Court ruled that "a police officer may [under] appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." The Supreme Court in *Terry* recognized that it is important for police to adopt an "intermediate response" prior to arresting a suspect. (*Terry*, 392 U.S. at 23, 20 L. Ed. 2d at 907, 88 S. Ct. at 1881.) The Supreme Court in *Adams v. Williams* (1972), 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, 1923, later ruled that an "intermediate response" may consist of a brief stop of a suspicious individual in order to determine his identity or to maintain the status quo while obtaining other information. This court has held that a stop, however, must be objectively reasonable and that the detaining officer must be able to point to "specific and articulable facts," which, if viewed in conjunction with rational inferences that may be drawn therefrom, reasonably warrant the intrusion. *People v. Mata* (1989), 178 Ill. App. 3d 155, 159-60, 533 N.E.2d 370, 374.

■ On the basis of the aforementioned case law and the above facts, the policeman's stop of defendant was objectively reasonable. Officer Tannenhill testified that he and his partner were assigned to monitor gang activity and truants. Having observed defendant with a group of teenagers near a high school during school hours, Officer Tannenhill approached defendant whereupon he asked defendant for identification and whether or not defendant was supposed to be in school. Officer Tannenhill's stop constituted an "intermediate response" made in order to obtain additional information while maintaining the status quo while obtaining other information. Defendant voluntarily cooperated with Officer Tannenhill and answered his questions. The fourth amendment is not implicated where the police merely approach an individual on the street and question him, provided that the person is willing to answer the questions. (*Florida v. Royer* (1983), 460 U.S. 491, 497-98, 75 L. Ed. 2d 231, 236, 103 S. Ct. 1319, 1323-24.) Accordingly, we hold that the stop was proper.

Defendant further contends that Officer Tannenhill did not observe any criminal activity and therefore was not justified in conducting a protective pat-down of defendant's outer clothing. We find that Officer Tannenhill's protective pat-down and subsequent arrest of defendant were both proper.

Defendant's suspicious behavior and concurrent actions gave Officer Tannenhill reason to believe that a protective pat-down was

appropriate. In the present case, when defendant failed to produce identification and became evasive, Officer Tannenhill performed a protective pat-down of defendant's clothing. When a police officer observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot and that the person with whom he is dealing could be armed and dangerous, the officer is entitled to perform a protective pat-down of the person's outer clothing. (*Terry v. Ohio* (1968), 392 U.S. 1, 30-31, 20 L. Ed. 2d 889, 911, 88 S. Ct. 1868, 1884-85.) The issue is whether a reasonably prudent person under the circumstances would be warranted in the belief that his safety or that of others was in danger. (*People v. Galvin* (1989), 127 Ill. 2d 153, 166-68, 535 N.E.2d 837, 843-44.) A reasonably prudent person in Officer Tannenhill's position would have held such a belief.

Defendant relies on *People v. Hunt* (1989), 188 Ill. App. 3d 359, 361-62, 544 N.E.2d 118, 119-20, in support of his assertion that Officer Tannenhill's pat-down was unjustified. *Hunt*, however, is distinguishable from the present case. In *Hunt*, the police officer's investigatory stop of the defendant was based entirely upon his general knowledge of past criminal activity in the area. In affirming the trial court's grant of the defendant's motion to quash arrest and suppress evidence, the *Hunt* court held that the officer simply observed two individuals seated in a car, emphasizing that the officer saw no one enter or exit the vehicle. In the present case, Officer Tannenhill not only patrolled an area known for gang activity and the presence of truants, he actually spoke to defendant, observed his behavior and noted defendant's inability to produce school identification. Thus, unlike the police officer in *Hunt*, Officer Tannenhill was able to formulate a reasonable suspicion of present criminal activity by defendant, which was based upon more information than his mere general knowledge of past criminal activity in the area.

■ The police also had probable cause to arrest defendant. While Officer Tannenhill performed a protective pat-down of defendant's outer clothing, he discovered a lump in defendant's pocket. Officer Tannenhill asked defendant what it was, to which defendant responded it was a doctor's prescription for medicine. Officer Tannenhill asked defendant if he would show him the vial. Defendant agreed and handed the vial, which did not have a doctor's or pharmacist's prescription label adhered to it, to Officer Tannenhill. When Officer Tannenhill asked defendant if he could name the doctor who gave him the prescription, defendant could not name the doctor. Defendant himself testified that he told the officer that his doctor prescribed 300 milligram pills of a drug known as Theophylline for his asthma,

but he then admitted that the contents of the vial were not Theophylline. Officer Tannenhill then opened the vial. Although defendant did not expressly give Officer Tannenhill permission to open the vial, defendant, by his actions, gave consent and permission to Officer Tannenhill for him to do so. Consent to search may be conveyed by nonverbal conduct. *People v. Kessler* (1986), 147 Ill. App. 3d 237, 240-42, 497 N.E.2d 1323, 1324-26.

Upon opening the vial, Officer Tannenhill discovered several "pony packs" of cocaine. At this point, the circumstances were sufficient to lead a reasonable person to believe that defendant committed a crime. Accordingly, we find that the police had probable cause to arrest defendant. "Probable cause to arrest exists where the police have knowledge of facts which would lead a reasonable person to believe that a crime has been committed by the person arrested." (*People v. Stuckey* (1992), 231 Ill. App. 3d 550, 560, 596 N.E.2d 646, 653; *People v. Erby* (1991), 213 Ill. App. 3d 657, 664, 572 N.E.2d 345, 349.) The inquiry which should be made in determining if probable cause for a warrantless arrest of a suspect existed at the time of the arrest is whether a reasonable person in the police officer's position would have believed that the suspect committed a crime. (*People v. Adams* (1989), 131 Ill. 2d 387, 398, 546 N.E.2d 561, 566.) A reasonable person in Officer Tannenhill's position would have believed that defendant committed a crime. A trial court's ruling on a motion to quash arrest and suppress evidence will not be disturbed by a court of review unless the finding is manifestly erroneous. (*People v. Foskey* (1990), 136 Ill. 2d 66, 76, 554 N.E.2d 192, 197; *People v. Redd* (1990), 135 Ill. 2d 252, 268, 553 N.E.2d 316, 322; *Stuckey*, 231 Ill. App. 3d at 560, 596 N.E.2d at 653.) Defendant has the burden of proving the unlawfulness of a search on the motion to quash and suppress. (*Kessler*, 147 Ill. App. 3d at 240, 497 N.E.2d at 1324.) Defendant has failed to demonstrate that the trial court's ruling on his motion to quash arrest and suppress evidence was manifestly erroneous. For the above reasons, we find that the police properly stopped defendant in order to determine whether he was guilty of a crime, and that upon detaining him, probable cause to arrest him arose after he tested the contents of the vial. We therefore affirm the order of the trial court denying defendant's motion to quash and suppress.

Affirmed.

TULLY, P.J., and CERDA, J., concur.